** NOT FOR PRINTED PUBLICATION **

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| JORDAN WASHINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 9:08-CV-103 |
| v. | § | |
| | § | JUDGE RON CLARK |
| HEMPHILL INDEPENDENT | § | |
| SCHOOL DISTRICT., | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jordan Washington claims that the failure of Defendant Hemphill Independent School District ("HISD") to place him in the position of middle school principal, counselor/district testing coordinator, or coach/director of student conduct discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*; 42 U.S.C. § 1981; and 42 U.S.C. § 1983. HISD now moves for summary judgment on all of Mr. Washington's claims.

Mr. Washington cannot make out a prima facie case of racial discrimination as to the counselor/district testing coordinator or coach/director of student conduct positions because he did not apply for them, and was not qualified for counselor/district testing coordinator position. Mr. Washington did apply for the position of middle school principal. He did not possess the qualifications listed on the job notice, but, viewing the facts in the light most favorable to Mr. Washington, the court concludes that he is at least minimally qualified for the position.

1

However, assuming that Mr. Washington has made out a prima facie case as to any of the positions, he cannot demonstrate that HISD's legitimate, non-discriminatory reasons for failing to select him, namely that the candidates selected had superior qualifications, were pretextual. HISD's motion is granted.

**I. Background**

The following facts are undisputed, unless otherwise stated.

A. <u>Three Individuals Apply for the Middle School Principal Position</u>

In March 2007, HISD's middle school principal resigned, effective at the conclusion of the school year. HISD posted this open position in the District's administrative offices, each of the three campus offices, on the District's website, and on the Region VII Educational Service Center's website. Three existing employees expressed interest – Mr. Washington, Paula Pruitt, and Monica Butler – and all were interviewed on May 14, 2007 by a committee consisting of four middle school teachers, both the girls' and boys' athletic coordinators, the elementary school principal, and the high school principal. With the exception of the girls' athletic coordinator, who is African-American, the remaining members of the committee are white.

B. <u>Mr. Washington's Qualifications</u>

Mr. Washington, who is African-American, had twelve years of teaching experience at the high school level at that time and was employed as a high school economics teacher and in-school suspension teacher during the 2006-07 school year. He has a Bachelor's degree in Marketing Management and a Master's degree in Agriculture Economics. In 1999, Mr. Washington received his mid-management certification, which is required by the Texas State

Board for Educator Certification to be a principal.[1] He has administered the TAKS test[2] only once in his career, during the 2007-08 school year, which occurred after the incidents complained of in this case. With the exception of one business communications class he taught in the middle school, he has spent his entire career at the high school level.

C.   Mr. Washington was Rated "Below Expectations"

In Mr. Washington's 2006-07 professional evaluation, he received the second lowest rating ("below expectations") in three of the eight categories. He received a rating of "proficient" in the remaining five. Mr. Washington disagreed with the results, and requested a second evaluation. On this evaluation, administered by the then-middle school principal Mario Osby, who is African-American, Mr. Washington received a rating of "below expectations" in four domains. He was on a "professional growth plan" as a result of his evaluations at the time he was being considered for the middle school principal position. Mr. Washington asserts that his unfavorable evaluations were not accurate reflections of what was happening in his

---

[1] Tex. Educ. Code § 21.046(b)-(d) permits the Board to establish the qualifications for certification as a principal. The Board requires that an individual serving in a principal or assistant principal position in Texas public schools hold a Lifetime Mid-Management, Standard Mid-Management, or Standard Principal certificate. The Lifetime and Standard Mid-Management certificates are no longer issued. *See* 19 Tex. Admin. Code §§ 241 *et seq*; State Beoard for Educator Certification: Certificate Renewal Requirement Information, available at http://www.sbec.state.tx.us/SBECOnline/certinfo/certren.asp.

[2] The "TAKS," or Texas Assessment of Knowledge and Skills, tests are used in primary and secondary schools in Texas to assess students' reading, writing, math, science, and social studies skills as required under Texas education standards. Texas high school seniors cannot graduate until they pass exit-level TAKS tests in several subjects, namely math; English language arts; science; and social studies. *See* "High School Graduation Requirements– Texas Education Agency," *available at* http://www.tea.state.tx.us/student.assessment/resources/grad/. English language arts is added at the high school level, to replace the reading and writing tests given at the elementary and junior high levels. "Texas Education Agency – Revised TAKS Information Booklets," available at http://www.tea.state.tx.us/index3.aspx?id=3693&menu_id3=793.

classroom, but does not dispute that these negative evaluations were available for consideration by the interview committee and superintendent.

D.	Ms. Pruitt's Qualifications

Ms. Pruitt, a white female, was employed by HISD as a first grade teacher during the 2006-07 school year. At that time, she had eighteen years of teaching experience, the majority at the intermediate/middle school level. She has a Master's of Education degree in Curriculum and Instruction. While she had not yet received her principal certification at the time of the interview, she had already completed the required course work and received her certification before the 2007-08 school year commenced as required by her hiring contract. In her 2006-07 professional evaluation, Ms. Pruitt received the highest rating ("exceeds expectations") in all eight categories.

E.	Ms. Butler's Qualifications

Ms. Butler, a white female, was employed as high school math and business teacher during the 2006-07 school year. At the time of the interview, she had fourteen years of teaching experience at both the middle and high school levels, and possessed a Master's degree in Educational Leadership. Ms. Butler is certified in secondary mathematics, secondary business, and as a principal. Her entire educational career has been spent teaching math, which is a subject area tested on the TAKS test. Ms. Butler received training on the TAKS test and administered it a number of times. In her 2006-07 professional evaluation, Ms. Butler received the highest rating ("exceeds expectations") in five of the eight categories and was rated "proficient" in the remaining three.

F.  The Interview Committee Rated Mr. Washington the Lowest

Each individual committee member awarded one score to every applicant. These scores were tabulated at the conclusion of all interviews, and the applicant with the highest overall score was recommended for hire by the committee. The District's interim superintendent, Glen Pearson, also interviewed each candidate individually and ranked them as well. Ms. Pruitt received 384 cumulative points, Ms. Butler received 362, and Mr. Washington received 210. Mr. Pearson recalculated the scores, deleting the highest and lowest ranked score for each candidate, but the rankings remained the same. Mr. Pearson recommended Ms. Pruitt to the District Board of Trustees, and she was ultimately hired for the position.

G.  Two Positions for Which Mr. Washington did not Apply

HISD also sought to fill two other positions in preparation for the 2007-08 school year. One was the dual position of counselor/district testing coordinator, which was originally posted as two separate positions. The other was coach/director of student conduct. It is undisputed that Mr. Washington did not apply for either dual position. According to him, this is because neither component of the positions that would have interested him – namely the district testing coordinator and director of student conduct – was ever posted. Mr. Pearson disputes this, stating that, like the middle school principal position, the counselor, district testing coordinator, and coach openings were posted in the District's administrative office, in each of the three campus offices, on the District's website, and on the Region VII Educational Service Center's website. It is undisputed that the director of student conduct position was never posted independently.

With respect to the counselor/district testing coordinator position, HISD did not receive any applications from candidates with a counseling certification. Ms. Butler expressed interest in the testing coordinator component of the job. No interviews were conducted specifically for this position, since Ms. Butler was apparently the only interested candidate and had already been interviewed for the middle school principal position. Ms. Butler was given the testing coordinator job, and the counselor component of the position remained open. Mr. Washington testified at deposition that he recalled seeing the counselor posting in May 2007, but that he did not remember seeing the district testing coordinator component on that posting. Def. Mot. Sum. J., Ex. A, at p. 167, l. 23 - p. 168, l. 16 [Doc. # 11].

As to the coach/director of student conduct position, the District posted an open coaching position on the Texas High School Coaching website in May 2007. Mr. Pearson subsequently decided to hire one person to serve as both coach and director of student conduct, with the director position created in order to assist all three school principals with discipline on their respective campuses without having to hire an assistant principal. Mr. Washington testified at deposition that he saw the coaching position posting but did not apply for it because he was not interested in coaching. Def. Mot. Sum. J., Ex. A, at p. 54, ll. 5-14. He had previously been employed as a coach at HISD for one year, but was relieved of his coaching duties by the Athletic Director. *Id.* at p. 28, l. 11 - p. 29, l. 7.

According to Mr. Washington, he did not see a posting for director of student conduct. *Id.* at p. 54, ll. 2-4. Mr. Pearson stated that this was true, because the main position was the coaching job, and the director of student conduct was a supplementary duty. Pl. Resp., Ex. 3, at p. 19, ll. 13-23 [Doc. # 12]. Nevertheless, Mr. Pearson also stated that he considered Mr.

6

Washington as a potential candidate for this position because of his prior coaching experience, and that Mr. Washington was not interested. Def. Mot. Sum. J., Ex. B, at p. 31, ll. 11-16. The District ultimately hired Kyle Bolyard to fill this position. Mr. Bolyard, who is white, had twenty years of experience in education and was employed at Woodville Independent School District ("WISD") as a coach and special education teacher when he was hired by HISD. While employed at WISD, Mr. Bolyard was involved in the "PASS Program" – "Positive Approach to Student Success" – and had duties similar to those of the director of student conduct at HISD. Mr. Bolyard was previously employed at HISD as a teacher and coach between 2000 and 2003.

H.  Mr. Washington Files Suit

Mr. Washington filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 1, 2007 and was issued a Right-to-Sue letter on June 3, 2008. He timely commenced this suit on June 11, 2008.

**II. Standard of Review**

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689 (1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986)).

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

## III. Discussion

HISD moves for summary judgment on the grounds that Mr. Washington cannot establish a prima facie case of race discrimination and, even if he could, HISD has presented a legitimate, non-discriminatory reason for failing to promote that Mr. Washington has not rebutted.

A. <u>Applicable Law</u>

   1. ***Title VII, Section 1981, and Section 1983***

Title VII prohibits an employer from discriminating against its employees on the basis of race. 42 U.S.C. § 2000e-2(a). 42 U.S.C. § 1981 provides that all persons in the United States will have the same contractual rights that white citizens have. "Claims of racial discrimination brought under [Section] 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S. Ct. 2363, 2377-78 (1989)).

To state a claim under Section 1983, Mr. Washington must (1) allege a violation of rights secured by the Constitution or the laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Lauderdale v. Tex. Dep't Crim. Justice*, 512 F.3d 157, 165 (5th Cir. 2007). With respect to the first element, Section 1983 and Title VII claims are parallel causes of action. *Id.* at 166 ("[T]he inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII."). The following law and analysis regarding discrimination therefore applies to Mr. Washington's Title VII, Section 1981, and Section 1983 claims.

2. ***Shifting burden of proof***

Mr. Washington bears the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). To establish a prima facie case of discrimination in a failure to promote case, Mr. Washington must show four elements: (1) he is a member of the protected class; (2) he sought and was qualified for the position; (3) he was rejected for the position; and (4) the position was given to someone outside the protected class. *Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005).

Once Mr. Washington has established a case of prima facie discrimination, the burden of production shifts to HISD, which must articulate a legitimate and non-discriminatory reason for the employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1817. If HISD comes forward with such a reason which, if believed, supports a finding that the employment action was non-discriminatory, the inference Mr. Washington has raised disappears from the case. *LaPierre*, 86 F.3d at 448; *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.10, 101 S. Ct. 1089, 1094-95 n.10.

"The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff." *LaPierre*, 86 F.3d at 448 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 210-11, 113 S. Ct. 2742, 749 (1993)). Mr. Washington must then offer

> sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for

its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed motives alternative).[3]

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). If Mr. Washington can demonstrate that race was a motivating factor in the adverse employment decision, the burden falls to HISD to show that the same employment action would have been made regardless of the "discriminatory animus." *Id.* at 312-13.

B. Analysis

   1. *Mr. Washington cannot demonstrate a prima facie case*

      a. **Elements one, three, and four**

HISD does not dispute elements one and three, namely that Mr. Washington is a member of a protected class, and that he was not promoted to any of the positions.

For element four, Mr. Washington must show that HISD promoted applicants outside of the protected class. HISD argues that because the District chose to promote applicants with superior qualifications, Mr. Washington cannot make out this element. This element of Mr. Washington's prima facie case does not require him to demonstrate that he was better qualified than the individuals promoted. That inquiry does not come into play until the third stage of the *McDonnell Douglas* analysis when Mr. Washington is required to present evidence rebutting HISD's proffered non-discriminatory explanation for its hiring decision. *See Celestine v. Petroleos de Venezuella* [sic] *SA*, 266 F.3d 343, 356 (5th Cir. 2001). All Mr. Washington must do at this stage to make out a prima facie case on this element is demonstrate that Ms. Pruitt,

---

[3]Mr. Washington appears to argue only that HISD's reason for failing to promote him was a pretext, rather than a mixed motive. *See, e.g.*, Pl. Resp. at p. 26 [Doc. # 11]. For the reasons discussed below, Mr. Washington cannot carry his burden on this point regardless of whether he argues under a pretext or mixed motive theory.

Ms. Butler, and Mr. Bolyard, who were given the positions in question, are not members of his protected class, and he has done so.

      b.    **Element two**

For this element, Mr. Washington is required to demonstrate that he applied for positions for which he was qualified. *McDonnell-Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Fields v. Hallsville Ind. Sch. Dist.*, 906 F.2d 1017, 1021 (5th Cir. 1990). It is undisputed that Mr. Washington applied for the middle school principal position.

      i.    <u>Middle school principal</u>

HISD argues that even though he sought the middle school principal position, Mr. Washington was not qualified for it. The job vacancy posting lists as the first qualifying requirement that the applicant possess a "Master's degree in educational administration." Def. Mot. Sum. J., Ex. M [Doc. # 11]. Mr. Washington's Master's degree is in Agriculture Economics. However, neither of the other candidates, Ms. Pruitt and Ms. Butler, possess the degree listed on the job posting. Both women do hold a Master's degree in a related field of education – Ms. Pruitt in Curriculum and Instruction and Ms. Butler in Educational Leadership. The District's posting did not specify a "Master's degree in educational administration or an equivalent degree in the field of education." It is a little late for HISD to now claim this precise degree was an absolute necessity, especially since Mr. Washington was interviewed notwithstanding the fact that his advanced degree is in Agriculture Economics.

The posted description also required applicants to have a "working knowledge of curriculum and instruction." Def. Mot. Sum. J., Ex. M. Mr. Washington taught only one middle school class during a single academic year over the course of his entire career. It is

difficult to imagine how an individual who both lacks an advanced degree in any educational field and has almost no experience at the middle school level could be considered to meet the qualifications for the job. However, the District chose not to include a minimum number of years of recent experience in its job vacancy, so it cannot rely on that requirement when arguing about the prima facie case.

The fact that Mr. Washington has a mid-management certificate means that he meets the minimum qualifications set by the Texas State Board for Educator Certification. Possession of a state certification would not be a valid substitute for all of the requirements listed in a carefully drafted job description for this position. However, the more general job notice in this case cuts against HISD's argument that Mr. Washington does not present a mere prima facie case as to his qualifications for the position. The question is close, but the court will assume that Mr. Washington has made out a prima facie case for purposes of the *McDonnell Douglas* burden shifting analysis.

ii. Coach/Director of student conduct

Mr. Washington argues that, taking the evidence in the light most favorable to him, there is a question as to whether HISD posted the testing coordinator and director of student conduct positions. However, Mr. Pearson testified, without contradiction, that the duties of the director of student conduct position were considered supplementary to the main position of coach. As already noted, it is undisputed that the coach position was posted; that Mr. Washington saw it; and that he displayed no interest in it. Failing to indicate any interest whatsoever in an opening, despite full awareness of its existence, is the antithesis of actually

applying for a position. *See Kolpakchi v. Principi*, 113 Fed. App'x 633, 637-38 (5th Cir. 2004) (unpublished).

Mr. Washington does not suggest that he failed to apply because it would have been futile to do so, nor does he offer any evidence of a "known and consistently enforced policy of discrimination" that such a theory would require. *Shackleford v. Deloitte & Touch, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (failure to apply for a position does not bar a discrimination claim if Plaintiff can demonstrate that applying would have been a futile gesture, which usually requires a showing that Plaintiff was deterred by a known and consistently enforced policy of discrimination). Because Mr. Washington simply cannot expect HISD to read his mind and somehow discern that "no" really means "yes," he cannot demonstrate this element of his prima facie case.

### iii. Counselor/district testing coordinator

With respect to the district testing coordinator job, even crediting Mr. Washington's argument that he would have applied had he known of this opening and that this is somehow the fault of HISD, Mr. Washington was again not qualified for the position. Even a brief examination of the duties of the district testing coordinator strongly supports this conclusion. Mr. Washington neither administered, nor had any involvement in, the TAKS test prior to the 2007-08 school year. There is no evidence that Mr. Washington was qualified to "supervise administration of TAKS" (duty no. 13); be "responsible for security of TAKS" (duty no. 14); and perform on-line assessments of the TAKS test (duty no. 17). Def. Mot. Sum. J., Ex. N, at p. 2. Again, Mr. Washington has failed to make out this element of his prima facie case for the counselor/district testing coordinator position.

2.  ***HISD has a legitimate, non-discriminatory reason for failing to promote Mr. Washington***

As to the position of middle school principal, Mr. Washington presents a prima facie case, although it is a close question. However, assuming for the purpose of analysis that Mr. Washington has established a prima facie case as to all three positions, he does not dispute that HISD has articulated a legitimate, non-discriminatory reason for failing to promote him, namely that better qualified individuals were chosen.

3.  ***No evidence of pretext or mixed motive***

Under the *McDonnell Douglas* framework, the burden then shifts back to Mr. Washington to refute HISD's reason for failing to promote him by coming forward with sufficient evidence to demonstrate that the reason is either a pretext or that, even if the reason was true, race was a motivating factor in the promoting decision. Mr. Washington cannot carry this burden.

Mr. Washington has put forth no evidence, other than the fact that Ms. Pruitt, Ms. Butler, and Mr. Bolyard are outside the protected class and his own subjective belief that his qualifications were superior, to refute HISD's reason for failing to hire him.[4] A Plaintiff may

---

[4]This conclusion is reinforced by Mr. Washington's own deposition testimony:

Q: So the only evidence that you have that the motivation for you not receiving these three positions is the fact that you happen to be African-American?
A. I feel I wasn't highly considered because of that.
Q. Just because you happen to be African-American?
A. Yes.
Q. There's not some other piece of evidence out there: Have you heard of anyone talk about your race being a factor in your employment?
A. Not to my face, no.
Q. What do you mean by that?
A. I haven't heard anyone talking about that, no.

be able to demonstrate that an employer's claim to have promoted the better qualified employee is a pretext by showing that his own qualifications are superior. *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S. Ct. 1195, 1197 (2006) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 187-88, 109 S. Ct. 2363 (1989)). However, subjective belief in the superiority of one's own qualifications is not sufficient. Even the fact that one individual's qualifications are equal to, or even slightly better than, another's does not establish a pretext for discrimination. *Celestine*, 266 F.3d at 357 (holding that differences in qualifications are generally not probative evidence of discrimination); *see also Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999) ("differences in qualifications between job candidates are generally not probative evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.").

In this case, Mr. Washington's qualifications are not clearly superior to those of the individuals hired or promoted – if anything, they are clearly inferior. His 2006-07 professional evaluation indicates that he performed "below expectations" in three out of eight categories. Upon reevaluation by an African-American – who also happened to be the middle school principal at that time[5] – he was rated "below expectations" in four out of eight categories. Ms. Pruitt, on the other hand, received the highest possible rating ("exceeds expectations") in all

---

| | |
|---|---|
| Q. | Have you seen anything in writing that's indicated that your race played a role in the decision not to hire you or place you in these positions? |
| A. | No. |

Def. Mot. Sum. J., Ex. A, p. 88, l. 25 - p. 89, l. 15 [Doc. # 11].

[5]Deposition of Jordan Washington, Pl. Resp., Ex. 2, at p. 141, ll. 8-9 [Doc. # 12].

eight categories. Mr. Washington can complain that he should have been rated higher, but he did not file a complaint with the EEOC or with any court on that ground. Mr. Washington, Ms. Pruitt, and Ms. Butler's professional evaluation ratings were before the middle school principal interview committee and Mr. Pearson, and they were entitled to factor the ratings into their rankings of these three candidates.

Setting aside Mr. Washington's evaluation, which is abysmal for one expecting to be a principal, all three individuals promoted or hired for the open positions were still better qualified than Mr. Washington for these jobs. Mr. Washington spent his entire teaching career at the high school level, with the exception of a single middle school class taught during one school year. While he did have a mid-management certification, his background was not in education; rather, his degrees are in marketing management and agriculture economics. He had never administered a TAKS test at the time the positions were being filled, nor had he even taught a subject on the TAKS test.

On the other hand, the candidate chosen for the middle school principal position, Ms. Pruitt, had a Master's of Education degree in Curriculum and Instruction; spent most of her career teaching at the middle school level; and received the highest possible scores on her most recent professional evaluation. While Ms. Pruitt did not have her mid-management certification in hand at the time she was hired as Mr. Washington did, she had completed the necessary course work and her contract required she obtain the certification before the 2007-08 school year began.

Ms. Butler, the candidate chosen for the testing coordinator position, possessed a Master's degree in Educational Leadership; had spent her entire career teaching a TAKS subject

17

(math); had undergone training on the TAKS test; administered the test a number of times; and received the highest possible rating in five of the eight categories on her most recent professional evaluation. Finally, Mr. Bolyard had a greater amount of overall teaching experience (twenty years to Mr. Washington's twelve); significant experience as a coach, which was the primary function of the individual filling the coach/director of student conduct position; and was involved in the PASS Program at WISD with duties similar to the director of student conduct at HISD. In short, Mr. Washington cannot show, or even plausibly claim, that his background and experience are superior to Ms. Pruitt's; Ms. Butler's; or Mr. Bolyard's. *Manning v. Chevron Chemical Co.,* 332 F.3d 874, 882 (5th Cir. 2003).

Mr. Washington's argument that HISD relied on subjective criteria during the middle school principal interview, such as how well each candidate did during the interview process, also fails. *See Todd v. Natchez-Adams Sch. Dist*., 160 Fed. App'x. 377, 380 (5th Cir. 2005) (unpublished). Courts are not human resources managers, and should not be in the business of micro-managing an employer's hiring or promoting decisions. *See Furnco Construction Corp. v. Waters*, 438 U.S. 567, 578, 98 S. Ct. 2943, 2950 (1978) ("Courts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it.").

Consider HISD's position if the school board had selected Mr. Washington as the middle school principal, with his lack of middle school teaching experience, no advanced degree in the field of education, marginal professional evaluations, and the lowest combined interview score. What legitimate, non-discriminatory reason could HISD have offered to Ms. Pruitt, an intermediate school teaching veteran with a Master's of Education in Curriculum and

Instruction, the highest possible professional evaluation ratings, and a combined interview score 82% higher than that received by Mr. Washington?  We want to keep the most highly qualified individuals in the classroom and promote marginal performers to be their supervisors?

Finally, the court notes that Mr. Washington's claims of race discrimination are undermined by the fact that he was already employed by HISD, and remains employed there to this day.  Because Mr. Washington was a member of this protected class when he was first hired by HISD, it is somewhat strained to now argue that his race was the reason HISD failed to promote him in 2007.  *See, e.g., Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996).  It is also difficult to credit any suggestion that HISD has a policy against promoting African-Americans to administrative positions like middle school principal, because the middle school principal at the time of Mr. Washington's 2006-07 professional evaluation was, by Mr. Washington's own admission, African-American.

Viewing the facts in the light most favorable to Mr. Washington, the record is devoid of sufficient evidence to refute HISD's legitimate, non-discriminatory contention that it hired Ms. Pruitt, Ms. Butler, and Mr. Bolyard because they were better qualified.

IT IS THEREFORE ORDERED that Defendant Hemphill Independent School District's Motion for Summary Judgment [Doc. # 11] is GRANTED.

So **ORDERED** and **SIGNED** this **19** day of **March, 2009.**

_____
Ron Clark, United States District Judge